**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**KEENA DIXON,**

                              **Plaintiff,**              **23-cv-8941 (JGK)**

           **- against -**                              **MEMORANDUM OPINION**
                                                        **AND ORDER**
**CITY OF NEW YORK, ET AL.,**

                              **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Keena Dixon ("Dixon"), brought this action against the City of New York (the "City"), as well as Deputy Warden Tisha Wilkins ("Wilkins"), Deputy Warden Wanda Jones ("Jones"), Deputy Warden Tamika White ("White"), Captain Jainai Kranwinkle ("Kranwinkle"), and Captain Maria Camacho ("Camacho"), in their individual and official capacities. The plaintiff alleges violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq., the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, et seq. The defendants now move to dismiss the plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). See ECF No. 22. For the following reasons, the motion to dismiss the Amended Complaint is **granted in part** and **denied in part**.

1

**I.**

Unless otherwise noted, the following facts are taken from the Amended Complaint and are accepted as true for the purposes of the motion to dismiss.[1]

**A.**

The plaintiff was employed as a correction officer with the New York City Department of Correction ("DOC") from December 22, 2011, to August 1, 2022. See Am. Compl. ¶ 27, ECF No. 19. At all times relevant to this action, the plaintiff was assigned to Vernon C. Bain Center ("VCBC"), a correctional facility operated by the City and located in the Bronx. Id. ¶ 29.

On or about July 3, 2020, the plaintiff sustained an on-duty injury to her hand when three of her fingers were crushed between a door and a door frame. Id. ¶ 30. The plaintiff received treatment from VCBC medical staff, who instructed the plaintiff to follow up with her personal doctor. Id. ¶ 31. On July 8, 2020, the plaintiff saw her primary care physician. Id. ¶ 32. After that appointment, she was placed on light duty. Id.

On July 30, 2020, the plaintiff visited a DOC doctor who placed the plaintiff on MMR3 restricted status which, according to the Amended Complaint, indicates that the plaintiff had

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

"serious physical and/or psychological limitations" and that her work duties should not entail inmate supervision or pushing, pulling, and lifting heavy objects. Id. ¶ 33. The DOC doctor also determined that the plaintiff could not work overtime or operate a DOC vehicle. Id.

The plaintiff alleges that when she returned to work following her July 30 appointment with the DOC doctor, she was assigned to a post in the 3B Control Room ("control room") by a DOC civilian employee at the direction of Administrative Deputy Warden White. Id. ¶ 35. The plaintiff alleges that this posting required her to have inmate contact and to move and lift heavy bags of laundry in violation of her MMR3 status. Id. The plaintiff further alleges that the defendants were on notice of her MMR3 status because it was posted on the assignment schedule. Id. ¶¶ 36-37. In the following weeks, the plaintiff continued to be stationed in the control room by Defendants White, Kranwinkle, and Camacho. Id. ¶ 40-42.

On November 30, 2020, while stationed in the control room, the plaintiff was informed by another correction officer that the door to the control room was broken. Id. ¶ 43. The plaintiff allegedly called Deputy Warden Wilkins to inform Wilkins that the door was broken and to request to be reassigned because her hand was in a splint and the posting violated the plaintiff's MMR3 status. Id. The plaintiff alleges that Wilkins addressed

3

the plaintiff in "a loud, aggressive and belligerent tone," and asked the plaintiff "[a]re you telling me you're not fit for duty?" Id.

Later that day, the plaintiff returned to the control room from her meal break to find that the door to the control room was closed. Id. ¶ 44. The plaintiff struggled to open the broken door with her splinted hand; while she attempted to open the door, she felt a pain in her right side. Id. The plaintiff alleges that the broken door caused an injury to her back, neck, spine, right hand, right wrist, and right shoulder and rotator cuff. Id. ¶ 45. The plaintiff further alleges that the broken door allowed inmates unauthorized access to the control room and placed the plaintiff at greater risk, although her MMR3 status prohibited inmate interaction. Id. ¶ 46. The plaintiff alleges that in the weeks and months following the plaintiff's November 30 injury she was repeatedly assigned to the control room post by Defendants White, Kranwinkle, and Camacho. Id. ¶¶ 47-49.

On January 4, 2021, the plaintiff was examined by a DOC doctor and again placed on MMR3 restricted status. Id. ¶ 50. Nevertheless, the plaintiff alleges that she continued to be assigned to the 3B Control Room by Defendants White, Kranwinkle, and Camacho. Id. ¶¶ 51-53. On January 15, 2021, during an institutional lock-in, an inmate approached the plaintiff in the control room and threatened her, saying, "I'm going to have

4

somebody shoot you and your white Toyota." Id. ¶ 54. The
plaintiff reported the incident to the Security Captain on
January 16, 2021, but the plaintiff alleges that Wilkins, White,
Jones, Kranwinkle, and Camacho failed to investigate the report
and continued to assign the plaintiff to the control room. Id.
¶¶ 55-60. The plaintiff alleges that she was again threatened by
an inmate in the control room and again reported the conduct on
June 10, 2021, but that the defendants failed to investigate and
that Defendants White, Kranwinkle, and Camacho continued to
assign the plaintiff to the control room. Id. ¶¶ 64-72.

On November 16, 2021, the plaintiff alleges that Kranwinkle
ordered her to work overtime despite the plaintiff's MMR3
status. Id. ¶ 73. The plaintiff was permitted to leave her post
only after her union threatened to file a grievance if the
plaintiff was forced to work overtime in violation of her MMR3
restricted status. Id. On November 17, 2021, the plaintiff was
again ordered to work overtime by Camacho and Jones, who
allegedly threatened the plaintiff with discipline if she left
her post. Id. ¶ 74.

On November 19, 2021, the plaintiff called in sick to the
DOC Health Management Division ("the Division") due to anxiety
caused by the defendants' alleged refusal to comply with the
plaintiff's reasonable accommodations. Id. ¶ 75. The Division
permitted the plaintiff to remain away from work with "no return

to duty date," pending a future appointment with the Division.
Id. The plaintiff was first seen by Dr. Spence, a psychologist
at the Division. Id. ¶ 76. On December 9, 2021, the plaintiff
began seeing a therapist who stated that: "It is my clinical
opinion that the [plaintiff] is unable to perform job duties at
this time." Id. ¶ 77. Subsequently, the plaintiff saw two other
doctors. Id. ¶¶ 78-79. On June 6, 2022, the plaintiff again saw
Dr. Spence, who stated that she "doesn't keep officers out from
work" and that "there was nothing physically wrong" with the
plaintiff. Id. ¶ 80. On a subsequent visit, on July 12, 2022,
the doctor informed the plaintiff that she would be returning
the plaintiff to work. Id. ¶ 81.

On July 27, 2022, the plaintiff attempted to resign from
the DOC, but Human Resources Supervisor Bernice Rivera allegedly
refused the plaintiff's attempted resignation, causing the
plaintiff significant anxiety. Id. ¶¶ 83-84. The plaintiff
alleges that this refusal was at the direction of Defendants
Wilkins and Jones in retaliation for the plaintiff's reporting
of incidents in connection with the violations of the
plaintiff's restricted MMR3 status. Id. ¶ 85. The plaintiff
further alleges that with the assistance of her union, she was
able to resign on August 1, 2022. Id. ¶ 86.

On or about October 27, 2022, the plaintiff filed a Charge
of Discrimination with the U.S. Equal Employment Opportunity

6

Commission ("EEOC"). Id. ¶ 8. The EEOC issued a Right to Sue letter dated July 17, 2023. Id., Ex. A. On October 11, 2023, the plaintiff brought an action in this Court, alleging claims of discrimination, retaliation, and hostile work environment pursuant to the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. On March 28, 2024, the plaintiff filed the First Amended Complaint. ECF No. 19. The defendants now move to dismiss the Amended Complaint. ECF No. 22.

**II.**

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u>

### III. ADA and Rehabilitation Act Claims

The plaintiff first alleges discrimination, retaliation, and hostile work environment claims against the City pursuant to the ADA and the Rehabilitation Act.

"Claims of disability discrimination brought pursuant to Title I of the ADA and the Rehabilitation Act are analyzed under the same standards." <u>De Figueroa v. N.Y.</u>, 403 F. Supp. 3d 133, 158 (E.D.N.Y. 2019) (citing 29 U.S.C. § 794(d)); <u>see also</u> <u>Lyons v. Legal Aid Soc'y</u>, 68 F.3d 1512, 1515 (2d Cir. 1995) (applying the same standard to failure-to-accommodate discrimination claims brought under both the ADA and the Rehabilitation Act). The same is true for retaliation claims, <u>see</u> <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002) (The Rehabilitation Act . . . contain[s] similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA."), and hostile work environment claims, <u>see</u> <u>De Figueroa</u>, 403 F. Supp. 3d at 160 (acknowledging that the elements of a hostile work environment claim are the same "under both acts").

Accordingly, the Court will address the claims arising under the ADA and the Rehabilitation Act together.

**A. Discrimination**

Both the ADA and the Rehabilitation Act make it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); see also 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."). Disability discrimination claims under the ADA "may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation." Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020); see also McMillan v. City of N.Y., 711 F.3d 120, 125–26 (2d Cir. 2013).[2]

In this case, the plaintiff alleges both that the defendants took an adverse employment action against her, see

---

[2] Disability claims are usually subject to the McDonnell-Douglas burden-shifting analysis wherein "when a [p]laintiff makes a prima facie case of discrimination, the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Piligian, 490 F. Supp. 3d at 717. However, "as the Second Circuit has explained, where a [p]laintiff alleges both a failure to

Am. Compl. ¶¶ 102–04, and that the defendants failed to provide her with reasonable accommodations, <u>see</u> <u>id.</u> ¶¶ 99–100. The plaintiff has pleaded successfully a discrimination claim pursuant to the failure to accommodate theory but not pursuant to the adverse employment action theory.

To plead a disability discrimination claim based on an adverse employment action, an employee must allege that (1) the employee's employer is subject to the ADA; (2) the employee was disabled within the meaning of the ADA; (3) the employee was otherwise qualified to perform the essential functions of the employee's job, with or without reasonable accommodation; and (4) the employee suffered an adverse employment action because of his disability. <u>Piligian</u>, 490 F. Supp. 3d at 716–17; <u>see also</u> <u>Davis v. N.Y.C. Dep't of Educ.</u>, 804 F.3d 231, 235 (2d Cir. 2015); <u>McMillan</u>, 711 F.3d at 125. Under the ADA, "the standard to be applied to . . . employment discrimination claims must be that 'but for' the disability, the adverse action would not have been taken." <u>Natofsky v. City of N.Y.</u>, 921 F.3d 337, 347 (2d Cir. 2019). The Second Circuit Court of Appeals has held that

---

accommodate and a related adverse employment action, this framework is not useful." <u>Id.</u>

this "but-for" causation standard also governs claims brought pursuant to the Rehabilitation Act. Id. at 341.

By contrast, to state a claim under the ADA premised on a failure-to-accommodate theory, an employee must allege that (1) the employee is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of the employee's disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015); see also McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96-97 (2d Cir. 2009); Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).

## 1. Disability

Regardless of whether the plaintiff brings a discrimination claim under an adverse employment action theory or a failure to accommodate theory, the plaintiff first must allege plausibly that the employee is disabled within the meaning of the ADA and Rehabilitation Act.

The Second Circuit Court of Appeals has observed that in 2008, Congress amended the ADA and "instructed courts that the 'definition of disability . . . shall be construed in favor of broad coverage of individuals.'" Woolf v. Strada, 949 F.3d 89, 94 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(4)(A)). The ADA

defines a "disability," as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). To determine whether a plaintiff suffers from a disability, "the Supreme Court compels district courts to follow a three-step process to conclude: (1) whether [the] plaintiff had an impairment; (2) whether the impairment affected a major life activity within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." Laface v. E. Suffolk BOCES, No. 18-cv-1314, 2020 WL 2489774, at *9 (E.D.N.Y. May 14, 2020); see also Bragdon v. Abbot, 524 U.S. 624, 631 (1998).

First, although impairment is not defined in the ADA or the Rehabilitation Act, guidance issued by the EEOC provides that physical and mental impairments include:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

> (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

12

29 C.F.R. § 1630.2(h); see also, e.g., Laface, 2020 WL 2489774, at *10 (citing 29 C.F.R. § 1630.2(h) in determining whether a plaintiff suffered from an "impairment").

Second, "[m]ajor life activities," are activities "of central importance to daily life" and include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005) (citing 29 C.F.R. § 1630.2(i)); see also Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir. 1998); 42 U.S.C. § 12102(2)(A) (citing substantially the same list of activities and noting that the list is nonexclusive). Moreover, "an impairment that 'substantially limits one major life activity need not limit other major life activities in order to be considered a disability.'" Woolf, 949 F.3d at 94 (quoting § 12102(4)(C)).

Finally, although the ADA does not define "substantially limits," nonbinding EEOC regulations provide guidance in interpreting this term. Ryan, 135 F.3d at 870. After the ADA was amended in 2008, "the EEOC clarified that '[t]he term substantially limits shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA' and 'is not meant to be a demanding standard.'" Parada v. Banco Indus. De Venezuela, C.A., 753 F.3d 62, 68 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)).

13

Accordingly, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." § 1630.2(j)(1)(ii). Nevertheless, "not every impairment will constitute a disability." Id.

The defendants contend that the plaintiff's impairment was temporary and that "temporary or non-chronic impairments are usually not considered disabilities." Defs.' Mot. to Dismiss at 9, ECF No. 22. "[T]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." 29 C.F.R. Pt. 1630, Interp. Guidance, § 1630.2(j)(1)(ix); Veldran v. Dejoy, 839 F. App'x 577, 579–80 (2d Cir. 2020) (summary order). Impairments that last for a short period of time typically are not substantially limiting although they may be if they are sufficiently severe. 29 C.R.F. Pt. 1630, Interp. Guidance, § 1630.2(j)(1)(ix). However, courts must engage in a case-by-case analysis and "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." § 1630.2(j)(1)(ix).

In this case, the plaintiff alleges that she suffered from a physical impairment within the meaning of the ADA. She allegedly experienced an "anatomical loss affecting" her "musculoskeletal system" when she initially injured her hand.

14

Specifically, she alleges that three fingers of her middle hand were "impacted" and "crushed" by a door and that her arm was in a splint. Am. Compl. ¶¶ 30, 44. Subsequently, in attempting to open the control room door, she sustained further injuries to her back, neck, spine, right hand, right wrist, and right shoulder and rotator cuff. Id. ¶ 45.

Next, the plaintiff plausibly alleges that this impairment limited a major life activity, namely the plaintiff's ability to work. She alleges that she was told by a DOC doctor that she should not supervise inmates, push, pull, or lift heavy objects, work overtime, or operate a department vehicle. Id. ¶ 33. The plaintiff alleges that while assigned to the control room, she struggled to open the door with her splinted hand. Id. ¶ 44. In attempting to open the door, she sustained further injuries. Id. ¶ 45. Accordingly, the plaintiff has alleged that her ability to work was limited.

Moreover, the plaintiff has alleged plausibly that she was "substantially limited" in her ability to work. In addition to the previously alleged facts, the plaintiff alleges that she began seeing a therapist who stated that: "It is my clinical opinion that the [plaintiff] is unable to perform job duties at this time." Id. ¶ 77. In light of EEOC guidance providing that the term, "substantially limits," "shall be construed broadly in favor of expansive coverage," the plaintiff has alleged

15

plausibly that her ability to work was substantially limited. See § 1630.2(j)(1)(i).

Although the defendants contend that the plaintiff's ability to work was not substantially limited because her impairment was temporary, the Amended Complaint does not indicate that the plaintiff's impairment has abated. In support of their argument, the defendants cite cases where it was undisputed that the plaintiffs' alleged impairments were short-lived. See, e.g., Veldran, 839 F. App'x at 579 (noting that the plaintiff did not dispute that his physical limitations lasted only four days); Zelasko v. N.Y.C. Dep't of Educ., No. 20-cv-5316, 2021 WL 2635121, at *2 (S.D.N.Y. June 25, 2021) (noting that EEOC interpretative guidance listed concussion as an example of a short-term impairment not rising to the level of a disability).

By contrast, in this case, the plaintiff was placed on MMR3 restricted status in July 2020, and again in January 2021. Am. Compl. ¶¶ 33, 50. In December 2021, the plaintiff's therapist stated: "It is my clinical opinion that the [patient] is unable to perform job duties at this time." Id. ¶ 77. By contrast, on June 6, 2022, Dr. Spence stated that "there was nothing physically wrong" with the plaintiff. However, reading the Amended Complaint in the light most favorable to the plaintiff, the uncertain duration of the plaintiff's alleged disability

16

does not provide grounds to grant the defendants' motion to
dismiss.

In sum, the plaintiff has alleged plausibly that she
suffered several physical impairments that substantially limited
her ability to work—a major life activity. It is therefore
necessary to consider whether the plaintiff has pleaded the
remaining elements of her discrimination claims alleged pursuant
to either an adverse-employment-action or a failure-to-
accommodate theory of liability.

## 2. Adverse Employment Action

Although the plaintiff has alleged plausibly that she is
disabled under the ADA, she has not pleaded a discrimination
claim pursuant to an adverse employment action theory because
she has failed to plead plausibly that she suffered an adverse
employment action because of her disability. See Piligian, 490
F. Supp. 3d at 716–17. Moreover, under both the ADA and the
Rehabilitation Act, the plaintiff must allege plausibly that
"but for" her disability, the adverse action would not have been
taken. Natofsky, 921 F.3d at 347.

An adverse employment action has the same meaning in the
ADA discrimination context as it does in the Title VII context.
Medcalf v. Thompson Hine LLP, 84 F. Supp. 3d 313, 328 n.14
(S.D.N.Y. 2015). "An adverse employment action is one which is
more disruptive than a mere inconvenience or an alteration of

17

job responsibilities." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (analyzing a Title VII claim). Examples of adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Fox v. Costco Wholesale Corp., 918 F.3d 65, 71–72 (2d Cir. 2019). Moreover, although "[a]n adverse employment action may or may not entail economic loss," "there must be a link between the discrimination and some tangible job benefits such as compensation, terms, conditions or privileges of employment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (analyzing a Title VII claim).

In this case, the plaintiff has alleged that her employer is subject to the ADA and that she was disabled within the meaning of the ADA. Additionally, neither party disputes that the plaintiff was otherwise qualified to perform the essential functions of her job. However, the facts alleged do not give rise to the inference that the plaintiff suffered an adverse employment action because of her disability.

The Amended Complaint appears to allege that the plaintiff suffered harassment from inmates and supervisors because of her disability and that she was constructively discharged because of her disability. See Am. Compl. ¶¶ 102, 104. However, the limited

18

harassment alleged does not constitute an adverse employment action. The complaint cites one instance where Deputy Warden Wilkins asked the plaintiff if she was fit for duty after the plaintiff requested to be reassigned from the control room. See id. ¶ 43. Even accepting that this question constituted verbal abuse, "verbal abuse is typically insufficient to constitute an adverse employment action because negative or otherwise insulting statements are hardly even actions, let alone adverse actions." See, e.g., Conklin v. U.S. Immigr. & Customs Enf't, 661 F. Supp. 3d 239, 263 (S.D.N.Y. 2023). And although the plaintiff allegedly experienced threatening comments by inmates, see Am. Compl. ¶¶ 54, 64, these threats seemingly were not linked to her disability and therefore do not satisfy the ADA and Rehabilitation Act's causation requirement. Further, to the extent the plaintiff alleges that her repeated assignment to the control room was an adverse employment action, she has not alleged either (1) that it was "more disruptive than a mere . . . alteration of job responsibilities," see Vega, 801 F.3d at 85, or (2) that she was assigned to the control room because of her disability rather than in spite of her disability—thereby satisfying the statute's causation requirement.

Finally, although true constructive discharge may constitute an adverse employment action, see Fox, 918 F.3d at 71-72 (noting that "termination of employment" may be an adverse

employment decision), to establish constructive discharge, the plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." <u>Fincher v. Depository Tr. & Clearing Corp.</u>, 604 F.3d 712, 725 (2d Cir. 2010). This is a high bar—higher than the bar to establish hostile work environment, <u>see</u> <u>id.</u>—and the plaintiff has failed to allege facts showing that she was constructively discharged.[3]

Because the plaintiff cannot identify an adverse employment action taken because of her disability, she cannot allege an ADA or Rehabilitation Act discrimination claim premised on the adverse employment action theory of discrimination.

**3. Failure to Accommodate**

By contrast, the plaintiff has stated a discrimination claim under a failure-to-accommodate theory because the plaintiff has alleged plausibly that with reasonable accommodations, the plaintiff could perform the essential functions of the job at issue, and that the employer refused to make such accommodations. <u>See</u> <u>Noll</u>, 787 F.3d at 94.

The defendants contend that the plaintiff failed to allege that she requested any reasonable accommodation or that any requested accommodation would allow her to perform the essential

---

[3] The Court discusses the allegation that the plaintiff was constructively discharged in greater depth below, in connection with the plaintiff's hostile work environment claims.

functions of her job. Defs.' Mot. to Dismiss at 12. However, the plaintiff alleges that the DOC doctor placed her on MMR3 status, that the defendants were on notice of the plaintiff's MMR3 status but refused to comply, and that, on at least one occasion, the plaintiff asked to be reassigned from the control room because of physical limitations caused by her injury and that Deputy Warden Wilkins refused. Am. Compl. ¶¶ 33, 36-37, 43. These allegations plausibly plead that the plaintiff requested reasonable accommodations—namely, that the defendants comply with her MMR3 status designation—and that the defendants refused. Moreover, the plaintiff alleges that with MMR3 restricted status, "there were numerous posts other than the 3B Control Room to which [the] [p]laintiff could have been assigned that would not entail" inmate contact or lifting heavy objects, including "the cashier office, the front entrance Covid testing post, the General Office, the Mail Room, the DOC Headquarters, or the 1st Floor Control Room." Id. ¶ 82.

Accordingly, the defendant's motion to dismiss the plaintiff's ADA and Rehabilitation Act discrimination claims based on a failure-to-accommodate theory is **denied.**

## B. Retaliation

The plaintiff also brings a claim for retaliation under the ADA and Rehabilitation Act, asserting that the defendants retaliated against her for reporting violations of her MMR3

status by continuing to assign her to the control room, forcing her to work overtime, and subjecting her to verbal abuse. <u>See</u> Pl.'s Opp. to Mot. to Dismiss at 14, ECF No. 23.[4] She also alleges that the defendants' "refusal to initially accept [the] [p]laintiff's resignation . . . was in retaliation for [the] [p]laintiff's complaints and reporting of incidents in regard to the repeated violations of [the] [p]laintiff's restricted medical status." Am. Compl. ¶ 85.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). "The Rehabilitation Act . . . contain[s] similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA." <u>Treglia</u>, 313 F.3d at 719.

To support a claim of retaliation brought pursuant to the ADA or the Rehabilitation Act, a plaintiff must allege plausibly that: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal

---

[4] The plaintiff also alleges that her constructive discharge constituted an adverse employment action in connection with her retaliation claim. However, as described above, the plaintiff has not alleged plausibly that she was constructively discharged and therefore constructive discharge is not a plausible basis for a claim of retaliation.

connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000). The retaliation provision found in Title VII of the Civil Rights Act of 1964 is "substantially similar" to the provision found in the ADA, and courts "apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA [and the Rehabilitation Act]." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

For the purposes of a retaliation claim, the Second Circuit Court of Appeals has defined an "adverse action" as "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 170 (2d Cir. 2024) (quoting Vega, 801 F.3d at 90). This definition "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." Id. (quoting Vega, 801 F.3d at 90).

"To prove a causal connection, a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." Id. Causation may be shown "through direct evidence of retaliatory animus or indirectly, by alleging that the plaintiff's protected activity was followed closely by

discriminatory treatment." Id.; Tafolla v. Heilig, 80 F.4th 111, 125-26 (2d Cir. 2023).

In this case, the plaintiff has alleged that she engaged in protected activity. Contrary to the defendants' contention, the plaintiff has alleged successfully that the defendants failed to accommodate her disability and the plaintiff's complaints regarding the defendants' failure to accommodate are therefore "protected activity" within the meaning of the ADA and Rehabilitation Act. Moreover, the Amended Complaint, "alleges facts which demonstrate that the defendants were aware of the [plaintiff's] attempts to seek such accommodation," Weixel, 287 F.3d at 149, and the plaintiff has therefore also alleged the second element of a retaliation claim.

To determine whether the plaintiff has alleged the third element of a retaliation claim, the Court must examine each of the plaintiff's alleged adverse employment actions separately to determine if they constitute adverse employment actions within the meaning of the ADA and the Rehabilitation Act. The plaintiff first alleges that she suffered verbal abuse in response to her reporting the defendants' failure to accommodate her disability. However, "verbal abuse is typically insufficient to constitute an 'adverse employment action' because negative or otherwise insulting statements are hardly even actions, let alone 'adverse actions.'" See, e.g., Scott v. City of N.Y.C. Dep't of Corr.,

641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (Title VII case). The plaintiff also alleges that she was forced to work overtime. However, the Court cannot determine on a motion to dismiss that forced overtime would not dissuade a reasonable employee from making a charge of discrimination. Finally, the plaintiff alleges both that her repeated assignment to the control room in violation of her MMR3 restricted status and the defendants' refusal to accept the plaintiff's attempted resignation constituted adverse employment actions.

Ultimately, it is unnecessary to determine whether these latter two purported adverse actions were adverse within the meaning of the ADA because—as with the plaintiff's allegation that she was forced to work overtime—the plaintiff has failed to allege a "but-for" connection between the complaints she made and the alleged adverse actions. The Amended Complaint alleges no facts demonstrating retaliatory animus from which the Court can conclude that the defendants required the plaintiff to work overtime, repeatedly assigned the plaintiff to the control room, or refused to accept the plaintiff's resignation because the plaintiff made complaints regarding the defendants' refusal to comply with her MMR3 status.

Not only does the plaintiff fail to allege direct evidence of a causal relationship between the protected activity and the alleged adverse action, but she also fails to allege facts that

25

could provide indirect evidence of causation. Plaintiffs may plead a causal relationship "indirectly, by alleging that the plaintiff's protected activity was followed closely by discriminatory treatment." See Sharikov, 103 F.4th at 170. However, the plaintiff's assignment to the control predated the plaintiff's complaints regarding the defendants' alleged refusal to comply with her MMR3 status and her complaints therefore were not "followed closely by discriminatory treatment." See id. Additionally, the plaintiff's last alleged written complaint was made on June 10, 2021, but she was not required to work overtime until November 16, 2021, and did attempt to resign until July 27, 2022. Am. Compl. ¶¶ 64, 73, 85. Accordingly, close temporal proximity does not provide indirect evidence of a causal connection between the plaintiff's complaints and the remaining alleged adverse actions.

Accordingly, because the plaintiff has failed to allege a causal connection between her protected activity and the defendants' alleged adverse actions, the defendants' motion to dismiss the plaintiff's retaliation claim, brought pursuant to the ADA and the Rehabilitation Act, is **granted.**

**C. Hostile Work Environment**

The defendant also moves to dismiss the plaintiff's ADA and Rehabilitation Act hostile work environment claims. Hostile work environment claims are cognizable under the ADA and the

Rehabilitation Act. See Fox, 918 F.3d at 74 (applying the Title VII hostile work environment standard to an ADA claim); Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist., 808 F. App'x 19, 23–24 (2d Cir. 2020) (summary order) (applying the same standard to claims for hostile work environment under the ADA and the Rehabilitation Act). "A hostile work environment claim requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano, 294 F.3d at 373 (Title VII claim).

A plaintiff alleging a hostile work environment claim must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." Fox, 918 F.3d at 74 (quoting Alfano, 294 F.3d at 374). Courts consider the totality of the circumstances in evaluating whether a plaintiff has met this burden including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

27

In this case, the plaintiff does not allege sufficiently severe or pervasive harassment to support a hostile work environment claim. The plaintiff alleges that Wilkins addressed the plaintiff in "a loud, aggressive and belligerent tone," and asked the plaintiff "[a]re you telling me you're not fit for duty?" Am. Compl. ¶ 43. However, the plaintiff cites only this isolated incident to support the contention that her supervisors verbally harassed her. Even in combination with her recurring assignment to the control room, the plaintiff does not plead plausibly that she was subjected to a hostile work environment.

Accordingly, the defendants' motion to dismiss the plaintiff's ADA and Rehabilitation Act hostile work environment claims is **granted.**

To the extent the plaintiff also contends that she was constructively discharged, the defendants' motion to dismiss is **granted.** A hostile work environment is a lesser included component of a claim of constructive discharge stemming from a hostile work environment. See Pa. State Police v. Suders, 542 U.S. 129, 149 (2004). "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Fincher, 604 F.3d at 725 (considering a hostile work environment claim in the Title VII

context). This standard is higher than the standard for establishing a hostile work environment. Id.

In this case, the acts the plaintiff alleges gave rise to a hostile work environment are the same as those which would give rise to any claim of constructive discharge. Accordingly, having already concluded that the plaintiff failed to plead a hostile work environment claim, the plaintiff's constructive discharge claim must also be dismissed.

**IV. NYSHRL Claims & NYCHRL Claims**

The plaintiff also alleges discrimination, hostile work environment, and retaliation claims pursuant to the New York State Human Rights Law and the New York City Human Rights Law.

Initially, it is possible to hold individual defendants liable pursuant to various theories under the NYSHRL and the NYCHRL. See, e.g., Nezaj v. PS450 Bar and Rest., 719 F. Supp. 3d 318, 329-30 (S.D.N.Y. 2024). The defendants have not attempted to argue that the individual defendants are not liable under any of these theories of individual liability. Therefore, at this time, the claims against the individual defendants for violations of the state and city statutes cannot be dismissed on the basis that there is no individual liability for the violation of those statutes.[5]

---

[5] There is no individual liability for violation of the ADA or the Rehabilitation Act. See Garibaldi v. Anixter, Inc., 407 F. Supp. 2d

Prior to 2019, discrimination claims brought pursuant to the NYSHRL were analyzed under the same standard as federal discrimination claims. <u>See</u>, <u>e.g.</u>, <u>Kinneary v. City of N.Y.</u>, 601 F.3d 151, 158 (2d Cir. 2010). Meanwhile, under the pre-2019 framework, the Second Circuit Court of Appeals held that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013); <u>see also</u> <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009) (claims brought under the NYCHRL must be reviewed "independently from and more liberally than their federal and state counterparts").

However, in 2019 the NYSHRL was amended to "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec.

---

449, 450 (W.D.N.Y. 2006) ("It is well-settled in the Second Circuit that individual employees, including supervisors, cannot be held personally liable for violations of the ADA."); <u>Harris v. Mills</u>, 478 F. Supp. 2d 544, 547–48 (S.D.N.Y. 2007) (dismissing claims "[b]ecause claims under the Rehabilitation Act may not be brought against individuals, either in their personal or official capacity"). The plaintiff has not attempted to allege claims against the individual defendants for violations of those statutes.

Law § 300 (2023). This language largely mirrors that of the NYCHRL which requires that the City Human Rights Law "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." Mihalik, 715 F.3d at 109 (citing N.Y.C. Admin. Code § 8-130).

New York Courts have not yet analyzed how this amendment to the NYSHRL alters the standard for liability under the NYSHRL, see Burgess v. New Sch. Univ., No. 23-cv-4944, 2024 WL 4149240, at *16 (S.D.N.Y. Sept. 11, 2024), but courts in this District have interpreted the amendment "to render the standard for claims [under the NYSHRL] closer to the standard of the NYCHRL." Livingston v. City of N.Y., 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); Kaye v. N.Y.C. Health & Hosps. Corp., No. 18-cv-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023); de Souza v. Planned Parenthood Fed'n of Am., Inc., No. 21-cv-5553, 2023 WL 2691458, at *11 (S.D.N.Y. Mar. 29, 2023) ("[T]he standard for NYSHRL claims is closer to the standard of the NYCHRL.").

The Court will therefore apply the more liberal NYCHRL standard to the plaintiff's NYSHRL discrimination, retaliation, and hostile work environment claims for the purposes of this

Memorandum Opinion and Order. See Mercado v. Mount Sinai Beth Israel, No. 21-cv-10467, 2023 WL 5975322, at *12 (S.D.N.Y. Sept. 14, 2023); see also Burgess, 2024 WL 4149240, at *16.

## A. Discrimination

The NYCHRL and post-amendment NYSHRL are less demanding of plaintiffs than the ADA or Rehabilitation Act for discrimination claims. For example, to plead discrimination under the NYCHRL, "a plaintiff is not required to show an adverse employment action and need only show differential treatment—that he was treated 'less well'—because of discriminatory intent." Livingston, 563 F. Supp. 3d at 234 (quoting Mihalik, 715 F.3d at 110). "[T]o make such a showing, a plaintiff need only demonstrate that discrimination was one of the motivating factors for the defendant's conduct, not that discrimination was the but-for cause of the plaintiff's differential treatment." Forrester v. Corizon Health, Inc., 278 F. Supp. 3d 618, 626 (E.D.N.Y. 2017). Moreover, a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside the protected group and sufficient facts from which it may reasonably be inferred that "the plaintiff's and comparator's circumstances bear a reasonably close resemblance." Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 454 (S.D.N.Y. 2023). Nevertheless, "the NYCHRL is not a general civility

code," and "where a plaintiff fails to demonstrate that the defendant's conduct was caused at least in part by discriminatory or retaliatory motive, or the defendant demonstrates that the alleged conduct did not exceed petty slights or trivial inconveniences, [the] plaintiff's claim must fail." Livingston, 563 F. Supp. 3d at 234.

In this case, the plaintiff failed to allege that she was treated "less well" because of her disability. She has not alleged any direct evidence of discriminatory intent and has not demonstrated disparate treatment of any similarly situated employee outside the protected group or sufficient facts from which it may be reasonably inferred that "the plaintiff's and comparator's circumstances bear a reasonably close resemblance." Kirkland-Hudson, 665 F. Supp. 3d at 454. The plaintiff has therefore failed to allege that the plaintiff was treated "less well" because of the defendants' discriminatory intent.

However, the plaintiff's failure-to-accommodate discrimination claim survives under the NYSHRL and the NYCHRL—just as it did under the ADA and Rehabilitation Act. The NYSHRL and the NYCHRL are at least as protective as the ADA and the Rehabilitation Act, and therefore a plaintiff who states a failure-to-accommodate claim under the ADA and Rehabilitation Act necessarily states a failure-to-accommodate claim under the NYSHRL and the NYCHRL. See Berger v. N.Y.C. Police Dep't., 304

F. Supp. 3d 360, 372 (S.D.N.Y. 2018); see also Torres v. MMS Grp., LLC, No. 22-cv-6142, 2024 WL 3274310, at *3 (S.D.N.Y. July 2, 2024) ("The elements necessary to state [a failure-to-accommodate] claim under Title II of the ADA, . . . RA, NYSHRL, and NYCHRL are substantially the same.").

The defendants' motion to dismiss the plaintiff's discrimination claims for failure to accommodate the plaintiff's disability, brought under state and municipal law is therefore **denied.**

## B. Retaliation

For retaliation claims brought pursuant to the NYCHRL and the post-amendment NYSHRL, a plaintiff need not allege a material adverse action and, instead, must only allege that the plaintiff "took an action opposing [the] discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Livingston, 563 F. Supp. 3d at 246 (quoting Mihalik, 715 F.3d at 112). Even under this standard, the plaintiff must establish a "causal link"—"that there was a causal connection between [the plaintiff's] protected activity and the employer's subsequent action." Mercado, 2023 WL 5975322, at *16.

In this case, even under the more generous NYCHRL standard, the plaintiff has failed to allege any facts supporting the inference that a causal connection exists between the

34

plaintiff's complaints regarding the defendants' alleged failure to accommodate her disability, and either the circumstances of the plaintiff's resignation or the treatment she faced while employed at VCBC.

Accordingly, the plaintiff has failed to plead a retaliation claim under state and municipal law and the defendants' motion to dismiss the retaliation claims brought under the NYSHRL and NYCHRL is **granted.**

**C. Hostile Work Environment**

Under the amended NYSHRL, a plaintiff bringing a hostile work environment claim need only plead that the plaintiff was subjected "to inferior terms, conditions or privileges of employment because of the [plaintiff's] membership in one or more of th[e] protected categories." N.Y. Exec. L. § 296(1)(h); Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024) ("[P]ursuant to the 2019 amendments to the NYSHRL, stating a hostile work environment claim under the NYSHRL now requires only that the plaintiff plead sufficient facts showing [that the plaintiff] was 'subjected to inferior terms, conditions, or privileges of employment' due to [the plaintiff's] membership in a protected class."); Tortorici v. Bus-Tev, LLC, No. 17-cv-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (same). "Nevertheless, a NYSHRL hostile work environment claim will not succeed if the offending actions are

35

no more than petty slights or trivial inconveniences." Ndongo v. Bank of China Ltd., No. 22-cv-5896, 2023 WL 2215261, at *8 (S.D.N.Y. Feb. 24, 2023). And even assuming a plaintiff was subjected to inferior terms, conditions or privileges of employment, the plaintiff must still plead that these actions were taken "because of" the plaintiff's protected characteristics. See id.

Meanwhile, pursuant to the NYCHRL, a hostile work environment is "one where there is differential treatment" based on membership in a protected class. Fattoruso v. Hilton Grand Vacations Co., LLC, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012); Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016). Under the NYCHRL the same standard applies to hostile work environment claims and discrimination claims—the plaintiff "need only demonstrate that [the plaintiff] was treated 'less well' than other employees because of his protected characteristic." See Tortorici, 2021 WL 4177209, at *13. This standard is "similar" to the pleading requirements the plaintiff must meet to sustain a hostile work environment claim under the amended NYSHRL. See id.

In this case, the plaintiff has failed to allege facts that would indicate that the plaintiff was subjected "to inferior terms, conditions or privileges of employment because of [the plaintiff's] membership in one or more of th[e] protected

categories." See N.Y. Exec. L. § 296(1)(h). The plaintiff does not allege that she received worse treatment than other non-disabled correction officers because of her disability. Likewise, as previously discussed, the plaintiff has not alleged facts to show that she was treated less well compared to other employees because of her disability. Accordingly, the plaintiff has failed to plead a hostile work environment claim under either NYSHRL or the NYCHRL standard.

The defendants' motion to dismiss the plaintiff's hostile work environment claims brought under state and municipal law is therefore **granted.**

### CONCLUSION

The Court has considered all of the arguments raised. To the extent not specifically addressed above, the arguments are either moot or without merit. The defendants' motion to dismiss is **granted in part** and **denied in part.** The Clerk is directed to close ECF No. 22.

SO ORDERED.
Dated:    New York, New York
          January 7, 2025

                                    _____
                                         **John G. Koeltl**
                                 **United States District Judge**